UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-318 (SRN/FLN) |
| Plaintiff, | |
| | **ORDER AND REPORT**<br>**AND RECOMMENDATION** |
| v. | |
| Eric Troy Ballard (4), | |
| Defendant. | |

Jeffrey Paulsen, Assistant United States Attorney, for Plaintiff.
Paul Appelbaum, for Defendant Eric Troy Ballard.

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant Eric Troy Ballard's motion for disclosure and suppression of electronic surveillance and wiretapping (ECF No. 139). The Court held a hearing on this motion on April 12, 2018. Exhibits were received and admitted into evidence. ECF No. 295. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Ballard's motion be **DENIED** to the extent it seeks to suppress electronic surveillance and wiretapping, and the Court **GRANTS** Ballard's motion to the extent it seeks disclosure of electronic surveillance and wiretapping evidence.

## I. INDICTMENT

On December 12, 2017, a United States Grand Jury returned an indictment charging Jimmie Lee McGowan, Jr., Steven Rena Stone, Jr., Donte Carnell Robinson, Eric Troy Ballard, Tekhola Temar Lee Trapps, Terrell Bias, Lawrence Michael Crenshaw, Calvin Markeith Berry, Ravel Drake, and Ronald Theodore Dietz with conspiring to distribute cocaine and cocaine base "crack" cocaine

in violation of 21 U.S.C §§ 846, 841(b)(1)(B). *See* ECF No. 1. The Indictment charges Ballard with

one count of distributing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and

one count of distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.*

## II. FACTUAL BACKGROUND

In 2017, law enforcement officers began investigating Donald Ray Owens, a member of the

street-gang the Gangster Disciples, and a reported leader of a group of individuals who engage in the

distribution of cocaine, crack cocaine, marijuana, and heroin (hereinafter "OWENS DTO"). Gov't

Ex. 7, 8. As part of their investigation, law enforcement employed multiple Confidential Reliable

Informants ("CRIs") to investigate the criminal activities of Owens and members of the OWENS

DTO. The CRI's provided law enforcement with information regarding members of OWENS DTO,

and participated in controlled purchases. Law enforcement also conducted physical surveillance,

trash searches, executed a search warrant, and employed under cover employees ("UCEs") in their

effort to gather evidence against members of the OWENS DTO. Investigators also obtained tracking

warrants for vehicles believed to be used by members of the OWENS DTO, installed pen register

and trap and trace devices, and collected cell site information for six telephone numbers associated

with OWENS DTO and believed to be used in the facilitation of drug trafficking activities.

On October 23, 2017, District Court Judge Donovan W. Frank authorized the interception

of wire and electronic communications of Defendant McGowan's telephone. Gov't Ex. 7. In his

Affidavit, Special Agent Nicholas L. Marshall stated that the interception of wire communications

over TT#1 was necessary because normal investigative techniques had either failed to fully achieve

all of the goals and objectives of the investigation, were too dangerous to attempt, or did not appear

reasonably likely to succeed if tried. *Id.* The Affidavit also provided that all the wire and electronic

communications intercepted over TT#1 would be minimized in accordance with the minimization requirements.

On November 22, 2017, Agent Marshall applied for an order authorizing the continued interception of wire and electronic communications for TT#1. Gov't Ex. 8. In his Affidavit, Agent Marshall stated that following the Court's October 23, 2017, Order, investigators were able to intercept calls and text messages involving the purchase and sale of controlled substances. However, Agent Marshall represented that the continued interception of TT#1 was needed because it was the only available investigative technique that had a reasonable likelihood of identifying the sources of McGowan's drug supply, and all the customers and co-conspirators within McGowan's drug distribution network. Judge Frank authorized the continued interception of TT#1, and the application again contained the requirement that all interception would be minimized.

## III. CONCLUSION OF LAW

Defendant Eric Troy Ballard seeks the disclosure and suppression of all electronic surveillance and wiretapping obtained against him. ECF No. 139. At the hearing, Ballard asked the Court to conduct a four corners review of the electronic surveillance and wiretapping applications, and neither Ballard nor the Government requested any post-hearing briefing on the issue.

### 1. Probable Cause

18 U.S.C. § 2518 contains the procedure for the authorization of electronic surveillance. Section 2518(3) allows a judge to enter an order allowing a wiretap when:

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section § 2516;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

3

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and

(d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3)(a)-(d). The probable cause showing required by § 2518 for electronic surveillance is the same as that required by the fourth amendment for a search warrant. *United States v. Macklin*, 902 F. 2d 1320, 1324 (8th Cir. 1990) (citing *United States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir. 1988)). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). In reviewing an order for the interception of electronic communication, our duty as the reviewing court "is only to ascertain that the district judge issuing the order had a substantial basis for . . . concluding[ing] that probable cause existed." *United States v. Milton*, 153 F.3d 891, 894 (8th Cir. 1998) (internal quotation omitted). The party challenging the wiretap has the burden of proving that the wiretap was unlawfully obtained or used. *United States v. Garcia*, 785 F.2d 214, 221 (8th Cir. 1986).

Here, Agent Marshall's wiretap Affidavits sets forth facts that OWENS DTO, to which McGowan was an alleged member, had committed and would likely continue to commit the crimes of conspiracy to distribute, possession of, and distribution of controlled substances. The Affidavits provide that because of OWENS DTO's methods of communication and distribution, law enforcement officers expected to intercept communications pertaining to these crimes from TT#1.

4

Further, Agent Marshall demonstrated that TT#1 belonged to McGowan through voicemail and voice identification, and he was able to show that TT#1 was directly related to the crimes under investigation and was used by McGowan to engage in criminal activity. The Affidavit for the continued interception of TT#1 similarly contains facts to support the finding that McGowan and members of the OWENS DTO were engaged in criminal activity, and continued interception of TT#1 would result in the interception of communications related to their criminal activity. Therefore, the Court concludes that the wiretap applications contained a sufficient basis for a probable cause finding.

**2. Necessity**

Section 2518(3)(c) is generally referred to as the necessity requirement, and it demands that normal investigative procedures be utilized before a wiretap is authorized. *United States v. Barnes*, 47 F.3d 963, 965 (8th Cir. 1995). It is designed to ensure that wiretapping is not to be routinely employed as the initial step in a criminal investigation and to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. *See United States v. Losing*, 560 F.2d 906, 910 (8th Cir. 1977). The government, however, does not need to exhaust all possible techniques before applying for a wiretap. *Barnes*, 47 F.3d at 965. The government's showing must be tested in a practical and commonsense fashion. *See United States v. Daly*, 535 F.2d 434, 438 (8th Cir.1976). Thus, if normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed or to be too dangerous, then an authorization order may be granted. *See United States v. O'Connell*, 841 F.2d 1408, 1414 (8th Cir. 1988). A judicial determination of necessity for the wiretap is a factual determination and reviewed for clear error. *United States v. Jackson*, 345 F.3d 638, 644 (8th Cir. 2003).

Under Eighth Circuit case law, if "law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." *Id.* In *Davis*, the court found that the affidavit and application established a necessity for the wiretap when the application explained that traditional investigative techniques had failed to provide needed information or were unlikely to succeed because of: the difficulty of placing undercover agents into the conspiracy, the ineffectiveness of physical surveillance, the surreptitious conduct of the coconspirators, the danger posed to confidential informants, and the limited utility of toll records and pen registers. *See Davis*, 882 F.2d at 1344.

In *O'Connell*, the Court determined the wiretap was necessary under § 2518(3)(c) because it was nearly impossible for the government to discover the full scope of the conspiracy and identities of all of the participants without the use of wiretaps. *See O'Connell*, 841 F.2d at 1414. In that case, informants were unwilling to testify and new informants could not be recruited because the organization only did business with people they had known for some time. *See id.* Although the government had collected a great deal of evidence prior to the wiretap, that evidence revealed a "large and far-flung conspiracy." *Id.* at 1415. Thus, even though the investigation had produced some evidence, the court determined that a wiretap was necessary to fully establish the entire conspiracy.

Similarly, in *United States v. Thompson*, 210 F.3d 855, 858–60 (8th Cir. 2000), the court held that an affidavit is sufficient if it shows that the investigators attempted other investigative techniques but those techniques did not sufficiently reveal the full extent of the conspiracy or identify everyone involved. *See id.*

The Court finds that Marshall's Affidavits satisfy the requirements of § 2518(3)(c). Here, law

enforcement used several traditional investigative techniques to investigate the drug conspiracy. Investigating officers conducted physical surveillance several times, used four separate CRIs, set up controlled buys, conducted trash searches, employed UCEs, pen registers, search warrants, grand jury subpoenas and interviews, and attempted to use other surveillance techniques in their investigation. As provided in Agent Marshall's Affidavit, law enforcement officers sought authorization for the wiretap only when other investigative techniques had been tried and failed, or deemed reasonable unlikely to succeed or too dangerous to attempt. As such, the Court finds that the wiretap applications also met the necessity requirement under § 2518(3)(c).

### 3. Minimization

18 U.S.C § 2518(5) provides in part that:

> Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objection, or in any event in thirty days.

"When assessing whether the government properly minimized under 18 U.S.C. § 2518(5), the court must determine if the government's actions were objectively reasonable in light of the facts and circumstances of the case." *United States v. Padilla-Pena*, 129 F.3d 457, 462 (8th Cir. 1997). "The minimization standard is one of reasonableness which is to be ascertained on a case-by-case basis." *Daly*, 535 F.2d at 441. Here, the applications provided that all communications intercepted would be conducted in a way as to minimize the interception of communications that was not criminal in nature. Text messages that were found to not be criminal in nature would be marked 'minimized' and text messages that appeared to be privileged would be marked 'privileged.' Further, Ballard has not pointed to a specific deficiency within the Affidavits, or made any argument that the

minimization procedure in this case was not objectively reasonable. Accordingly, we find that the minimization requirements of 18 U.S.C § 2518(5) were satisfied.

### 4. Good Faith Exception

Lastly, it should be noted, that even if this Court was to find that the wiretap applications and affidavits did not contain probable cause, or failed to meet the necessity or minimization requirements of 18 U.S.C. § 2518, the wiretap orders would be facially valid under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). "In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule does not require the suppression of evidence seized by the police pursuant to a search warrant which was sought, obtained, and executed in objectively reasonable good faith, but which was held, subsequently, to have been issued without probable cause. *United States v. Lomeli*, 676 F. 3d 734, 742 (8th Cir. 2012). The *Leon* good faith exception applies to wiretap authorization in the same way that it applies to traditional search and seizure warrants. *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994).

In the present case, the Court finds that Agent Marshall relied on the wiretap orders in good faith. The Court is satisfied that this was not a situation where the supporting affidavits were so void of factual support that it would be objectively unreasonable for a law enforcement officer to rely on them. *Cf. United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) (concluding that the good-faith exception did not apply where the affidavit at issue contained no facts that the defendant was involved in marijuana activities or that such activities were occurring on the premises searched). Additionally, there is no evidence that Agent Marshall included false information in the supporting Affidavits, or that Judge Frank failed to act in a neutral manner. Therefore, the Court finds that any derivative evidence obtained as a result of the wiretap orders need not be suppressed.

## IV. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Ballards motion (ECF No. 139) be **DENIED** to the extent it seeks suppression of electronic surveillance and wiretapping.

## IV. ORDER

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ballard's motion (ECF No. 139) is **GRANTED** to the extent it seeks disclosure of electronic surveillance and wiretapping.


DATED: June 18, 2018                    _s/Franklin L. Noel_____

                                         FRANKLIN L. NOEL
                                         United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 2, 2018**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 2, 2018** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.